WARREN v. HALLEY.

1. PRINCIPAL AND AGENT—SALE—AUTHORITY TO COLLECT.

Defendant, having contracted with an agent of plaintiff for the purchase of a piano, called at plaintiff's place of business, and asked him if the price should be paid to such agent. Plaintiff replied that he preferred to have payments made at the office, but that he would send an agent to collect the money. Subsequently the person negotiating the sale presented to defendant a receipt on one of plaintiff's printed blanks, signed in plaintiff's name, by himself as agent. *Held*, in an action of replevin for the piano, that the facts stated were sufficient to support a finding that defendant was justified in making payment to such person.

2. SAME—INSTRUCTIONS TO JURY.

The case was properly submitted to the jury upon the single question whether the conduct of the plaintiff had been such as to justify the defendant in believing that such person was authorized to receive the money, there being no evidence that he had express authority to make collections; and it was not error to refuse instructions that would not aid in determining this question.

3. SAME.

An instruction that such person, not being an agent to deliver the property, had no right to collect the purchase price with-out special authority to do so, was properly refused, since it excluded the theory that plaintiff had held out such agent as having authority to collect.

4. TRIAL—STATEMENTS OF COUNSEL.

Counsel have the right to present their own views of the testimony in argument to the jury; and where a contention is made in apparent good faith, and there is evidence tending to support it, a case will not be reversed because such contention, in the judgment of the court, is unsound.

5. SAME.

In an action involving the question whether the defendant was justified in paying money to one assuming to act as agent for the plaintiff, a statement by defendant's counsel that "defendant is a poor man, and he has been obliged to mortgage his home, all the property he has in the world," to make such pay-

ment, is not ground for a reversal, where the court sharply rebuked counsel for his conduct, and instructed the jury to disregard the statement.

Error to Wayne; Frazer, J. Submitted October 25, 1895. Decided November 19, 1895.

Replevin by Joseph A. Warren and another against George P. Halley. From a judgment for defendant, plaintiffs bring error. Affirmed.

*Thomas T. Leete, Jr.,* for appellants.

*Washington I. Robinson,* for appellee.

MONTGOMERY, J. Plaintiffs are dealers in pianos in the city of Detroit. In the month of August, 1893, one Armstrong called on the defendant and his wife, representing himself to be an agent for the plaintiffs, and, after some talk between the parties, Armstrong stated that he would send up a piano on approval. On the same day a piano was sent up from plaintiffs' place of business to defendant's house. The fact appears to be, as shown by the testimony of Mr. Joseph Warren, that at that time the only employment which Armstrong had was to go with Mr. Hands, another agent of the plaintiffs, to play pianos for him and assist in making sales; and plaintiffs' testimony shows that when the piano was sent from the warerooms to defendant's house it was on an order signed by the agent Hands. It appears by the undisputed testimony that the defendant afterwards made payment to Armstrong for the piano. Plaintiffs subsequently demanded the piano, and, on refusal to deliver it, brought replevin. The sole question litigated in the court below was whether the defendant was justified in making payment to Armstrong, it appearing that he had never turned in the money to plaintiffs. The question depended for its solution mainly on the testimony of Mrs. Halley and Mr. Joseph Warren relating to an interview at plaintiffs' place of business after the piano was delivered at defend-

ant's house, and before the payment was made to Armstrong.

Mr. Warren testified that Mrs. Halley on that occasion told him that she had a piano of plaintiffs on approval; that—

" She did not like Mr. Hands, and his way and manner, but that she liked Mr. Armstrong very much. She asked me if she should pay Mr. Armstrong the $300. I answered that we preferred to have payments made at the office, ' but if you cannot do that we will send a duly-authorized collector to receive the money.' She said that she and her husband were coming on Saturday to the office and pay the $300."

Mrs. Halley testified as follows:

" I told Mr. Warren that I was going to pay cash. Mr. Warren said they allowed a discount for cash. I then said that I would come down to the office and pay the money. Mr. Warren said that that would be too much trouble for me; that he would send his agent up. I told him that it was Armstrong who had made the sale. Mr. Warren said Armstrong was sick. I knew that he was sick, for he walked lame and had a slipper on one foot. Mr. Warren said that Armstrong must have been making up for lost time."

She further testified that $300 was not mentioned in the interview, and that she did not tell Mr. Warren that she and her husband would bring the money to the office; that subsequently Armstrong brought a receipt on one of the printed blanks used by the plaintiffs, and signed in plaintiffs' name, by himself as agent, and defendant paid him for the piano. The jury found a verdict for the defendant, and plaintiffs bring error.

1. It is contended that the court should have directed a verdict for the plaintiffs. This depends upon whether there was in the conversation between Warren and Mrs. Halley anything stated which is fairly open to a construction which justified her in believing that she or her husband was authorized in making payment to Armstrong, and we think there was. The interpretation of spoken

words is for the jury. Here we have the fact that Armstrong had dealt with the defendant as an agent of plaintiffs (this is clear enough from Mr. Warren's testimony); that Mrs. Halley asked if she should pay Armstrong; that Mr. Warren's first reply was that he preferred to have payments made at the office; but that Mrs. Halley swears that he said that he would send an agent to collect. This statement was made with the knowledge that the only agents Mrs. Halley knew were Armstrong and Hands, and it might well be implied that Mr. Warren also understood that she knew no difference in the authority of the two. No intimation was given that she was not to pay Armstrong, although the direct question was asked if she should. The jury might well have said that under the circumstances Mrs. Halley was justified in inferring, when one of the agents of plaintiffs, whom plaintiffs knew well she had dealt with, came to her with a receipt, that he was sent in pursuance to the promise which plaintiffs had made, and was authorized to collect the money.

2.　Plaintiffs assign error on the refusal of the court to give their seventh request, as follows:

" It is no defense to this action to claim that the plaintiffs were careless in reposing confidence in Armstrong, for this does not make the plaintiffs liable to the defendant if the defendant failed to exercise diligence in inquiring as to the authority of Armstrong to collect money."

The court did charge the jury that the fact that Armstrong was authorized to take orders for pianos was no evidence that he was authorized to make collections, and that it was the duty of defendant to make inquiry as to the extent of Armstrong's authority, and then very properly directed the attention of the jury to the single question on that branch of the case, as follows:

"You have a right to say whether, under the testimony in this case, there was anything in the conduct or behavior of Mr. Warren at the time he had the interview with

the defendant or the defendant's wife which justified
them in believing, exercising due caution and care on
their part, that Armstrong was the authorized agent of
the firm of Clough & Warren. If you say from the evi-
dence that he was not, and there was nothing in the con-
duct or language or statements or behavior of Mr. Warren
(I think he is the only member of the firm they claim to
have talked with) that would lead them fairly and hon-
estly to believe that Armstrong was the agent and author-
ized to collect this money, then your verdict in this case
must be for the plaintiffs; but if you shall find that in
this conversation or talk there was such action or conduct
or behavior on the part of Mr. Warren as justified them
in believing that Armstrong was the agent authorized
to collect, and that in good faith they made this payment
under such circumstances, then the title of the property
passed to the defendant in this case, regardless of the
consideration paid for it."

This instruction presented in plain language the
recognized principle that, where one of two innocent
parties must suffer through the wrong of a third party,
the loss must fall upon that one who has put it within
the power of the third party to commit the wrong.

3. Plaintiffs' seventh assignment of error is that the
court improperly refused their ninth request to charge.
This request was as follows:

"There is no testimony that the property in question
was ever in the possession of Armstrong for the purpose
of delivering the same to the defendant. He was not,
therefore, an agent to deliver the property, and had no
right to collect the money for the same without special
authority to do so."

Plaintiffs were not entitled to this request, for the
reason that it ignored the question of whether there was
any holding out of Armstrong as having authority, though
he might not in fact have been given authority, to collect.
The circuit judge did properly submit that question in the
instruction above given, and followed it by saying, "That
is all there is to this case." The jury could not have
failed to understand this charge. It had the merit of

directing the attention of the jury to a single question, and requiring a decision on that point.

4.   Error is assigned upon the argument of counsel— *First,* because he stated to the jury that plaintiffs delivered the piano to Armstrong; *second,* because he attempted to arouse the prejudice of the jury. While there is no direct testimony that the piano was delivered to Armstrong, there is testimony that he is the person who agreed to send the piano up to defendant's house, and on the same day it was delivered at defendant's house. We think that under these circumstances defendant's counsel was justified in making the contention that there was a delivery to Armstrong. While the evidence may not have been sufficient to show this, it is the right of counsel to present his own views of the testimony, and a case should not be reversed because of a contention of counsel which, in the judgment of the court, is not sound, if made in apparent good faith, and if there is any evidence tending to support the contention. A further answer to plaintiffs' claim on this subject, as well as to the claim that there was no evidence that the piano was in Armstrong's possession, is that the case was not permitted to turn on this point at all.

A more reprehensible statement made by counsel is as follows: "This defendant is a poor man, and he has been obliged to mortgage his home—all the property he has in the world—to pay for this piano." This statement should not have been made, but, on objection by plaintiffs' counsel, the court at once rebuked counsel for the defendant, saying: "You have no right to state to the jury that this defendant is a poor man. It makes no difference in the decision of this case whether he is rich or poor, and I tell you, gentlemen of the jury, that you are not to regard the judgment of counsel on that point." In view of this marked rebuke, it is quite as likely that the attempt to seek the favor of the jury in this unwarranted manner would react against the defendant as that it would tell

in his favor. The jury are to be credited with average intelligence, and, applying that presumption to the jury in the present case, it is impossible to presume that they were influenced by this unseemly remark.

The judgment will be affirmed.

The other Justices concurred.